

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| JEFFERY A. PHILLIPS,<br><br>Plaintiffs,<br><br>v.<br><br>EMORY UNIVERSITY,<br><br>Defendants. | DOCKET NO.:<br><br>**1 19-CV-4640**<br><br>CIVIL ACTION FILE NO.<br><br>_____<br><br>**[JURY TRIAL DEMANDED]** |

---

COMPLAINT FOR EMPLOYMENT RETALIATION

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff JEFFERY PHILLIPS ("Phillips") and, by through the undersigned counsel of record, hereby files this Complaint for Damages against Defendants, EMORY UNIVERSITY, respectively, and "Defendants" collectively), respectfully showing the Court as follows:

## **JURISDICTION AND VENUE**

(1)

This is an action pursuant to: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) et seq., Hostile work environment, race discrimination, and retaliation; (2); The Fair Labor Standards Act (the "FLSA"), as amended, 29 U.S.C. §201 et seq., for unpaid overtime wages; and (4) state law claims of battery, intentional infliction of emotional distress, and negligent supervision and retention.

(2)

This Court has original jurisdiction over Plaintiff's Title VII and Section 1981 claims pursuant to 28 U.S.C. §§ 1331.

(3)

Venue in this district and division is proper under 28 U.S.C. § 1391 as Defendants reside and maintain a place of business in the Northern District of

Georgia, Atlanta Division, and the unlawful conduct complained of herein occurred in this district and division.

(4)

This Court has Supplemental Jurisdiction over pendant state law claims under 28 U.S.C. § 1367 because said claims arise from the same nucleus of operative facts as the federal claims which form the basis of the Complaint.

(5)

Plaintiff satisfied all administrative prerequisites to institute this action under Title VII. Specifically, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). The Notice of Right to Sue for Plaintiff's Charge was dated July 18, 2019 and Plaintiff received it shortly thereafter. Plaintiff has brought this suit within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

(6)

Plaintiff is a citizen of the United States and is entitled to bring actions of this nature and type. Plaintiff is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

(7)

At all times relevant to this action, Plaintiff was an employee of Defendant Emory University within the meaning of Title VII of the Civil Rights Act and the FLSA § 3(e), 29 U.S.C. § 203(e). Plaintiff performed non-exempt work for Defendant Emory University Hospital within the last three (3) years and regularly worked in excess of forty (40) hours in a given work-week.

(8)

Defendant Emory University with its principal place of business located at 201 Dowman Drive | Atlanta | GA 30322. It is authorized to do business, and is actually doing business in Atlanta, Georgia. Emory University may be served by delivering process to its registered agent, Amy Adelman, Emory University, 201 Dowman Drive, 312 Administration Building, Atlanta, GA 30322, USA, Dekalb County.

(9)

Emory University is an employer within the meaning of Title VII and the FLSA: it is engaged in an industry affecting commerce, employs more than 500 persons for each working day in each of twenty (20) calendar weeks in the current or preceding calendar year, and has an annual gross income well over $500,000.

(10)

Defendant Maquitha Mitchell is now, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this

Court. At all times relevant to this action, Mitchell was Plaintiff's direct supervisor (at time of termination), who had authority to terminate Plaintiff's employment.

(11)

Defendant Angeline Butler is now, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court. At all times relevant to this action, Butler was NOT Plaintiff's direct supervisor who had no authority to terminate Plaintiff's employment.

(12)

Defendant Lou Bottoms is now, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court. At all times relevant to this action, Bottoms was not Plaintiff's direct supervisor who had (influence) authority to terminate Plaintiff's employment.

## STATEMENT OF FACTS

I. **Background**

(13)

Defendant Emory University is a teaching hospital with over 3 locations in the Metropolitan Atlanta area and surrounding cities clinics and/or surgery centers.

(14)

Plaintiff- a thirty-three (33) year old African-American male- is a former

employee of Defendant Emory University who worked at the Atlanta, Georgia main campus from October 16, 2017 until he was terminated on March 15, 2018.

(15)

As a Anesthesia Tech, Plaintiff was paid $12.51 per hour for performing calibration of invasive monitors and sophisticated equipment and assisting anesthesiology personnel with placement of invasive hemodynamic lines.

(16)

In addition to the aforementioned duties, Plaintiff provided assistants in testing equipment to ensure that it remains in proper operating condition, performed lower level troubleshooting and corrective action to prevent hazardous situations.

(17)

At all times relevant to this action, at times Plaintiff had independent discretion or decision- making authority; all of Plaintiff's actions and job duties were undertaken at the explicit direction of his supervisors, or otherwise required approval from the same.

(18)

The reporting hierarchy within the Department of Anesthesia Services during Plaintiff's employment was as follows: Plaintiff was directly supervised by the Manager Arnold Barros and Jeffrey Norman (from October 16 to January 8, 2018) until both were displaced/replaced by Manager, Defendant "Maquitha Mitchell",

(Unit Director of Perioperative Services), who directly reports to the Specialty Director of Perioperative Services, "Lou Bottoms".

(19)

Defendant "Mitchell" constantly chastised and reprimanded Plaintiff even though he performed his task diligently. For instance, although Plaintiff received excellent accomplishments from his fellow colleagues, training personnel, and Anesthesiologist, Defendant Bottoms found ways to influence and find fault in Plaintiff.

(20)

In addition, when Plaintiff was hired, Plaintiff was promised a set schedule so he could continue to attend school as a part-time student at Georgia State University. However, the Plaintiff's schedule was changed due to unforeseen circumstances and a change in leadership. Defendant claimed that they could not trust Plaintiff working at night unsupervised and changed his schedule to work day shift. When Plaintiff decided to leave one day because he had class, Plaintiff was forcefully written up for (a) attendance, (b) misconduct, and (c) Insubordination.

(21)

These corrective disciplinary action came without verbal warning and Plaintiff was not in probationary period. Plaintiff had never been verbally warned or written up. Plaintiff filed a grievance with Human Resources and on March 6, 2018 and

was terminated on March 14, 2018.

## II. Disparate Treatment

At all times relevant to this action, Plaintiff was an African-American male employee who was disciplined harsher than whites. Plaintiff was disciplined without any discussion. "Lou Bottoms", Specialty Director, and Sharon Barret, HR manager (both white females) made final disciplinary action decision for Anesthesia Services.

## III. Hostile Work Environment and Retaliation

(22)

The culture is one that resonates; feeling undervalued, discredit of employee's abilities/expertise, environment filled with blatant racial prejudices, failure to engage the employees, rude conversations and conflicts.

(23)

This culture has been allowed complaints to be overlooked for so long, that it required an outside consultant to assess the environment. Even, the Plaintiff's current Care transformation process and PLEDGE had been disregarded.

## IV. Retaliation

(24)

Upon learning that the Plaintiff could file a grievance against disciplinary actions. Plaintiff contacted "Barrett", HR manager. While trying to work a date and

time to meet. Plaintiff never heard back from HR "Barrett" to resolved date and time. On March 14, 2018, Plaintiff received an unexpected call while on lunch break to go to "Lou Bottoms" office where she and "Maquitha Mitchell" were at. They approached the Plaintiff in an intimidating and hostile manner. With waving of fingers, loud and hostile tones and demeaning statements being made.

(25)

Plaintiff became a target, because he spoke up for himself, was confident in his complaint to HR, his abilities and skill set. Plaintiff was accused of being belligerent, aggressive and hostile when in deed he was not.

(26)

This was an act of retaliation to attempt to upset the Plaintiff so that "Bottoms" and "Mitchell" could terminate the Plaintiff. When Plaintiff asked to be excused for a moment, "Bottoms" called security and had the Plaintiff escorted to his locker. Plaintiff left for the day. The grievance would have exposed that the disciplinary actions should have never taken place as Plaintiff had already submitted proof to HR.

(27)

Plaintiff reported all incidents prior to official grievance statements to HR "Sharron Barret", which lead to the official grievance paperwork being filed.

Upon finding out that HR manager "Sharron Barret", and Specialty Director

"Lou Bottoms" had a closed door conference about the decision of the Plaintiff's termination. The Plaintiff was advanced to call "Sharron Barret" to include a mediator. "Sharron Barret" had no intent to schedule a meeting with the Plaintiff after speaking with "Bottoms" on a telephone call March 13, 2018.

(28)

As a result of Defendants' inaction, Plaintiff felt frightened, anxious, nervous, embarrassed, humiliated, and powerless at work. On March 14, 2019, Plaintiff visited HR department requesting to speak with "Sharron Barret", to discuss options for keeping his job, ask HR about the mediator, and inform HR of Plaintiff's rights as it relating to an EEOC complaint. "Barret" was in office, but was too busy to speak with Plaintiff.

(29)

The stated reason for Plaintiff's termination was pretext. In reality, Emory University's decision to terminate Plaintiff's employment was motivated by among others – (1) Plaintiff's assertive nature, (2) Plaintiff's unwillingness to yield to Defendant's aggressive, unwanted and rude behavior, (3) Plaintiff's notice to HR of rights to file a EEOC complaint.

(30)

On July 18, 2018, Plaintiff decided to file a Charge with the EEOC.

## CLAIMS FOR RELIEF
## COUNT I
## RELALIATION AND HOSTILE WORK ENVIRONMENT
(Title VII Against Defendant Emory University)

(31)

Although Plaintiff was qualified to perform his duties, Defendants retaliated by being untrustworthy on corrective disciplinary actions, failed to perform an ethical investigation and response from Human Resources to his harassment, retaliation, race; and terminated his employment. The environment that Defendants created materially changed the terms and conditions of Plaintiff's work, creating a hostile environment. This in turn caused Plaintiff to experience serious health concerns resulting in some mental and physical challenges.

(32)

Defendants' actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

(33)

Defendants' have willfully and wantonly disregarded Plaintiff's statutory rights and Defendants' discrimination was undertaken in bad faith.

(34)

As a direct and proximate result of the above-described unlawful employment

practices, Plaintiff has suffered and continues to suffer the indignity of race discrimination, the invasion of right to be free from race discrimination, humiliation, loss of income and benefits, and other indignities, for which he is entitled to recover.

(35)

At all times relevant to this action, the relationship between Plaintiff and Defendant Emory University was a relationship of "employee" to "employer."

Title VII and Section 1981 makes it unlawful for an employer to retaliate against an employee who reports or opposes harassment, discrimination based on retaliation and/or race.

## Count II
## STATE LAW – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against All Defendants)**

(36)

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein. Defendants conduct towards Plaintiff mentioned herein was intentional and/or reckless, extreme and outrageous, and caused Plaintiff severe shame, humiliation, embarrassment and emotional distress of a nature that no reasonable person can endure.

(37)

Defendants knew or should have known that such conduct would result in severe emotional distress by Plaintiff. As a result of Defendants' conduct, Plaintiff has and will continue to suffer damages for which she is entitled to recover as provided by law.

## COUNT III
## STATE LAW – NEGLIGENT SUPERVISION AND RETENTION
### (Against Defendant Emory University)

(38)

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

(39)

Defendant Emory University knew, or in the exercise of ordinary diligence, should have known of its employees' racial and harassment of Plaintiff. Emory University owed a duty to Plaintiff to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

(40)

Emory University breached the aforementioned duty by negligently supervising and retaining its employees who continued to harass Plaintiff and

therefore continued to expose Plaintiff to a hostile work environment. Further, Emory University ratified, condoned or adopted its employees' conduct via inaction.

(41)

Emory University acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff and/or his federally protected rights. Additional and in the alternative, Emory University acted recklessly toward Plaintiff and/or his federally protected rights. Accordingly, Defendant is thus liable to Plaintiff for all damages.

## COUNT VIII
## PUNITIVE DAMAGES
### (Against All Defendants)

(42)

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

(43)

Defendants' actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression and complete disregard of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendants for and from such conduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(1) Grant Plaintiff a trial by jury as to all triable issues of act;

(2) Grant declaratory judgment that Plaintiff's right under the FLSA, Title VII, Section 1981, and Georgia State Laws have been violated;

(3) Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4) Award compensatory damages in an amount to be determined by a jury;

(5) Award appropriate back overtime pay, reimbursement for lost salary, unpaid wages, and compensate for other damages in amounts to be shown at trial;

(6) Award prejudgment interest on any award of back pay made by the jury as required by law;

(7) Award liquidated damages equal to any back pay for Defendants' willful violation of the FLSA;

(8) Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

(9) Award Plaintiff's attorneys' fees, costs, and disbursements if any; and

(10) Award Plaintiff such further and additional relief as may be just and appropriate.

Dated: October 16, 2019

Respectfully submitted,

Jeffery A. Phillips

PLAINTIFF

jphillips.a@gmail.com
4658 GRAND CENTRAL
PARKWAY
LOT 137
DECATUR, GEORGIA 30035
Telephone: (404) 941-6642
Alternative
Telephone: (404) 880-6955

By: _____
     JEFFERY A. PHILLIPS

---

COMPLAINT FOR EMPLOYMENT RETALIATION