FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 0 5 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| JEFFERY A. PHILLIPS, | DOCKET NO.: |
| Plaintiffs, | |
| | CIVIL ACTION FILE NO. |
| v. | 1:19-CV-4640-TWT-JKL |
| EMORY UNIVERSITY, *at all* | |
| Defendants. | [JURY TRIAL DEMANDED] |

COMPLAINT FOR EMPLOYMENT RETALIATION

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff JEFFERY PHILLIPS ("Phillips") and, by through the undersigned counsel of record, hereby files this Complaint for Damages against Defendants, EMORY UNIVERSITY, respectively, and "Defendants" collectively), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

### (1)

This is an action pursuant to: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) et seq., Hostile work environment, race discrimination, and retaliation; (2); The Fair Labor Standards Act (the "FLSA"), as amended, 29 U.S.C. §201 et seq., for unpaid overtime wages; and (4) state law claims of battery, intentional infliction of emotional distress, and negligent supervision and retention.

### (2)

This Court has original jurisdiction over Plaintiff's Title VII and Section 1981 claims pursuant to 28 U.S.C. §§ 1331.

### (3)

Venue in this district and division is proper under 28 U.S.C. § 1391 as Defendants reside and maintain a place of business in the Northern District of

Georgia, Atlanta Division, and the unlawful conduct complained of herein occurred in this district and division.

(4)

This Court has Supplemental Jurisdiction over pendant state law claims under 28 U.S.C. § 1367 because said claims arise from the same nucleus of operative facts as the federal claims which form the basis of the Complaint.

(5)

Plaintiff satisfied all administrative prerequisites to institute this action under Title VII. Specifically, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). The Notice of Right to Sue for Plaintiff's Charge was dated July 18, 2019 and Plaintiff received it shortly thereafter. Plaintiff has brought this suit within ninety (90) days of receipt of the Notice of Right to Sue.

PARTIES

(6)

Plaintiff is a citizen of the United States and is entitled to bring actions of this nature and type. Plaintiff is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

(7)

At all times relevant to this action, Plaintiff was an employee of Defendant

Emory University within the meaning of Title VII of the Civil Rights Act and the FLSA § 3(e), 29 U.S.C. § 203(e). Plaintiff performed non-exempt work for Defendant Emory University Hospital within the last three (3) years and regularly worked in excess of forty (40) hours in a given work-week.

(8)

Defendant Emory University with its principal place of business located at 201 Dowman Drive | Atlanta | GA 30322. It is authorized to do business, and is actually doing business in Atlanta, Georgia. Emory University may be served by delivering process to its registered agent, Amy Adelman, Emory University, 201 Dowman Drive, 312 Administration Building, Atlanta, GA 30322, USA, Dekalb County.

(9)

Emory University is an employer within the meaning of Title VII and the FLSA: it is engaged in an industry affecting commerce, employs more than 500 persons for each working day in each of twenty (20) calendar weeks in the current or preceding calendar year, and has an annual gross income well over $500,000.

(10)

Defendant Maquitha Mitchell (African American) is now, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court. At all times relevant to this action, Mitchell was

Plaintiff's direct supervisor (at time of termination), who had authority to terminate Plaintiff's employment.

(11)

Defendant Angeline Butler (African American) is now, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court. At all times relevant to this action, Butler was NOT Plaintiff's direct supervisor who had no authority to terminate Plaintiff's employment.

(12)

Defendant Lou Bottoms (White American) is now, and was at all times relevant to this action, a resident of the State of Georgia and is subject to the jurisdiction of this Court. At all times relevant to this action, Bottoms was not Plaintiff's direct supervisor who had (influence) authority to terminate Plaintiff's employment.

## STATEMENT OF FACTS

**I.** Background

(13)

Defendant Emory University is a teaching hospital with over 3 locations in the Metropolitan Atlanta area and surrounding cities clinics and/or surgery centers.

(14)

Plaintiff- a thirty-three (33) year old African-American male- is a former
employee of Defendant Emory University who worked at the Atlanta, Georgia
main campus from October 16, 2017 until he was terminated on March 15, 2018.

(15)

As a Anesthesia Tech, Plaintiff was paid $12.51 per hour for performing
calibration of invasive monitors and sophisticated equipment and assisting
anesthesiology personnel with placement of invasive hemodynamic lines.

(16)

In addition to the aforementioned duties, Plaintiff provided assistants in testing
equipment to ensure that it remains in proper operating condition, performed lower
level troubleshooting and corrective action to prevent hazardous situations.

(17)

At all times relevant to this action, at times Plaintiff had independent discretion
or decision- making authority; all of Plaintiff's actions and job duties were
undertaken at the explicit direction of his supervisors, or otherwise required
approval from the same.

(18)

The reporting hierarchy within the Department of Anesthesia Services during
Plaintiff's employment was as follows: Plaintiff was directly supervised by the

Manager Arnold Barros (African American) and Jeffrey Norman (African American) (from October 16 to January 8, 2018) until both were displaced/replaced by Manager, Defendant "Maquitha Mitchell" (African American), (Unit Director of Perioperative Services), who directly reports to the Specialty Director of Perioperative Services, "Lou Bottoms" (White American).

(19)

Defendant "Mitchell" constantly chastised and reprimanded Plaintiff even though he performed his task diligently. For instance, although Plaintiff received excellent accomplishments from his fellow colleagues, training personnel, and Anesthesiologist, Defendant Bottoms (White American) found ways to influence and find fault in Plaintiff (African American). All said managers besides Bottoms are all African American. The African American mangers were intimidated by Bottoms and feared losing their jobs if they did not carry out certain task. Plaintiff was disciplined harsher than whites for this very reason. Michael Bobich, Amy Chin and James Roberts all employees of Emory Hospital in the Department of Anesthesia and Pre-Operative Services were all White Americans who displayed misconduct and was never disciplined. Bottoms had no reason to give instructions for Mitchell to terminate Plaintiff's employment. This was done out of sheer harassment and discrimination. After Plaintiff was notified by current employees of Emory Hospital, stating that they are sick of the discrimination and wanted

Plaintiff to know that a current employee heard Bottoms and another nurse who was also White American speaking poorly and nurse telling Bottoms that the African American workers (Terrell Jackson), and (Jeffery Phillips) did not work hard enough and because of this they should be watched and monitored closely.

(20)

In addition, when Plaintiff was hired, Plaintiff was promised a set schedule so he could continue to attend school as a part-time student at Georgia State University. However, the Plaintiff's schedule was changed due to unforeseen circumstances and a change in leadership. Defendant claimed that they could not trust Plaintiff working at night unsupervised and changed his schedule to work day shift. When Plaintiff decided to leave one day because he had class, Plaintiff was forcefully written up for (a) attendance, (b) misconduct, and (c) Insubordination. The substance of the grievance was of racial harassment and discrimination for these reasons. Bottoms and Human Resources manager are both White Americans who make final/executive decisions on one's employment. Based on the disciplinary writes ups there was no real reason to terminate Plaintiff's employment. Plaintiff was written up, but did not agree with the actions against him. This is why human resources have such grievance in place. The grievance process was not carried out ethically or fair. Why? There are other employees who went thoroughly through the grievance process who was not of the same race as

the Plaintiff. Plaintiff was contacted by a current employee (1) who heard a dialogue between two other employees (employee 2 and employee 3), after Plaintiff was terminated, that the Plaintiff indeed never displayed any actions of misconduct or insubordination. Employee who does not want their name mentioned at this time (as they do not want to lose their job), said he witness Plaintiff being calm, respectful, and not displaying any intentional acts of misconduct while Bottoms lurered Plaintiff into an office ambushing him and causing friction. Employee witnessed Plaintiff standing up with his hands in front of his body and heard Plaintiff calmly ask to be dismissed as he needed to go to the restroom. Employee also mentioned he witness Bottoms and Mitchell planning the termination prior to the ambush which took place March 14, 2018. Bottoms (White American) called security on Plaintiff (Black American) to have Plaintiff removed from the area as if the Plaintiff was causing harm to other employees. Witness mentioned that there was no need for security or to have Plaintiff removed because Plaintiff did not display any course of threatening, disrespectful or harmful behavior. This act was humiliating and unreasonable.

(21)

These corrective disciplinary action came without verbal warning and Plaintiff was not in probationary period. Plaintiff had never been verbally warned or written up. Plaintiff filed a grievance with Human Resources on March 6, 2018 and was

terminated on March 14, 2018.

**II.**   Disparate Treatment

At all times relevant to this action, Plaintiff was an African-American male employee who was disciplined harsher than whites. Plaintiff was disciplined without any discussion. "Lou Bottoms", Specialty Director, and Sharon Barret, HR manager (both white females) made final disciplinary action decision for Anesthesia Services.

**III.**   Hostile Work Environment and Retaliation

(22)

The culture is one that resonates; feeling undervalued, discredit of employee's abilities/expertise, environment filled with blatant racial prejudices, failure to engage the employees, rude conversations and conflicts. Over a period of four months' employee's including Plaintiff raced concerns to Doctors and upper management the feeling of hostile work environment. This caused doctors who worked closely with Anesthesia staff to bring in a "TASK FORCE MANAGEMENT TEAM" to resolved some of the discourse and revolving employee's in/out the hospital employment.

(23)

This culture has been allowed complaints to be overlooked for so long, that it required an outside consultant to assess the environment. Even, the Plaintiff's

current Care transformation process and PLEDGE had been disregarded. Bottoms altered the Plaintiff's working conditions to such that the Plaintiff found it to be hostile and abusive. Given the Plaintiff reasons to submit grievance to Human Resources on the notion that the conduct of management was to sever, humiliating and the conduct was unreasonably interfered with the employee's job performance.

(24)

Stereotyping/discriminatory comments to the Plaintiff and other African-American's was made from Lou Bottoms. "why are you all huddling in this hallway like boys in the alley." "Get out of this hallway and get back to work." On several occasions Emory Healthcare employee Valencia Wyche, has witnessed several occurrences where Lou Bottoms has been hostile to non-white employees. Waving her hands in their face, poking staff with her fingers, etc.; creating a hostile work environment. Many have resigned and Lou has also disciplined and/or terminated employees under these conditions. These issues have not been dealt with fairly among the African American employees at Emory Hospital when grievances or other disciplinary actions were filed with HR manager Sharon Barrett, which have been witness also by Valencia Wyche.

Who was the employee they gave the outline of communication to for following the grievance process?

**IV.** Retaliation

(25)

Upon learning that the Plaintiff could file a grievance against disciplinary

actions. Plaintiff contacted "Barrett", HR manager. While trying to work a date and

time to meet. Plaintiff never heard back from HR "Barrett" to resolved date and

time. On March 14, 2018, Plaintiff received an unexpected call while on lunch

break to go to "Lou Bottoms" office where she and "Maquitha Mitchell" were at.

They approached the Plaintiff in an intimidating and hostile manner. With waving

of fingers, loud and hostile tones and demeaning statements being made.

(26)

Plaintiff became a target, because he spoke up for himself, was confident in his

complaint to HR, his abilities and skill set. Plaintiff was accused of being

belligerent, aggressive and hostile when in deed he was not. The fact the Plaintiff

had never been written up before for misconduct, attendance or insubordination the

Plaintiff filed paperwork with Human Resources so that Plaintiff could keep his

job and work out any problems that were misunderstood. It was in sheer retaliation

when Bottoms called Plaintiff to her office ambushing Plaintiff causing him to feel

intimidated and harassed. The Plaintiff was never supposed to have dialogue with

Bottoms or Mitchell regarding his grievance based on the human resources paper

work given to Plaintiff. This was causally related to the Plaintiff's reported

allegations to Human Resources.

(27)

This was an act of retaliation to attempt to upset the Plaintiff so that "Bottoms" and "Mitchell" could terminate the Plaintiff. When Plaintiff asked to be excused for a moment, "Bottoms" called security and had the Plaintiff escorted to his locker. Plaintiff left for the day. The grievance would have exposed that the disciplinary actions should have never taken place as Plaintiff had already submitted proof to HR.

(28)

Plaintiff reported all incidents prior to official grievance statements to HR "Sharron Barret", which lead to the official grievance paperwork being filed.

Upon finding out that HR manager "Sharron Barret", and Specialty Director "Lou Bottoms" had a closed door conference about the decision of the Plaintiff's termination. The Plaintiff was advanced to call "Sharron Barret" to include a mediator. "Sharron Barret" had no intent to schedule a meeting with the Plaintiff after speaking with "Bottoms" on a telephone call March 13, 2018.

(29)

As a result of Defendants' inaction, Plaintiff felt frightened, anxious, nervous, embarrassed, humiliated, and powerless at work. On March 14, 2019, Plaintiff visited HR department requesting to speak with "Sharron Barret", to discuss options for keeping his job, ask HR about the mediator, and inform HR of

Plaintiff's rights as it relating to an EEOC complaint. "Barret" was in office, but was too busy to speak with Plaintiff. The unwarranted criticism and written warning for absenteeism was unlawful. Why? Plaintiff had never been written up before for absenteeism/tardiness (the Plaintiff was never late or absent from work until Bottoms had his schedule changed), and in fact there had been multiple congratulations and recognition to Plaintiff from Jeffrey Norman or his promptness and desired work ability to carry out task.

(30)

The stated reason for Plaintiff's termination was pretext. In reality, Emory University's decision to terminate Plaintiff's employment was motivated by among others – (1) Plaintiff's assertive nature, (2) Plaintiff's unwillingness to yield to Defendant's aggressive, unwanted and rude behavior, (3) Plaintiff's notice to HR of rights to file a EEOC complaint, and the fact that Defendant had no real reason to terminate Plaintiff based on the information above, Defendant intentionally terminated Plaintiff's employment because of the grievance made to HR and the fact the Plaintiff explained to Mitchell that they did not have a reason to terminate him and he was going to file a charge with EEOC.

(31)

**V.**   Equal Pay/Comparable Worth

      Upon learning that the Plaintiff was being removed from night shift to day

shift. The Plaintiff argued to management that he would not receive the same rate of pay and in fact being paid lower wages than most employees of the opposite sex and race for equal work that required equal skill, effort, and responsibilities.

On March 1, 2018 the Plaintiff sent an email to Maquitha Mitchell asking that she not change his schedule because not only would it affect his school schedule, but it would affect his ability to be paid the amount he was promised during interview and on-boarding.

(32)

The Plaintiff was in school as mentioned and applied for night shift position and accepted the job based upon a flexible schedule and extra pay in which Arnold Barros assured would not be a problem. The Plaintiff presented to management that the change was going to be a hardship on his finances and pursing his educational goals. Management took a total disregard for the Plaintiff's request. The Plaintiff's well-being, livelihood and mental health state was affected. The Defendant used on healthy practices to intentionally cause harm to the Plaintiff's overall quality of life. In fact, a non-black was able to keep her schedule of a certain day off each week when the Plaintiff's schedule was changed. This makes this particular event unlawful. This employee told management that she was not able to work on a particular day due to having other obligations outside of the work environment.

(33)

The Department of Anesthesia is operated differently from staffing in other parts of the Emory Hospital System. Again, Maquitha Mitchell had no prior experience in scheduling Anesthesia staff which include; Anesthesia Tech's, Anesthesia Technologist. In fact, Maquitha Mitchell and Angeline Butler lacked the knowledge for operating in their roles as Anesthesia manager's and to be newly appointed managers for such an under staffed and none developed team of individuals.

(34)

On July 18, 2018, Plaintiff decided to file a Charge with the EEOC.

<u>CLAIMS FOR RELIEF</u><br><u>COUNT I</u><br><u>RELALIATION AND HOSTILE WORK ENVIRONMENT</u><br>(Title VII Against Defendant Emory University)

(35)

Although Plaintiff was qualified to perform his duties, Defendants retaliated by being untrustworthy on corrective disciplinary actions, failed to perform an ethical investigation and response from Human Resources to his harassment, retaliation, race; and terminated his employment. The Plaintiff's rights were violated and discriminatory based on the fact the Plaintiff was not granted the ability to go through with the grievance process. The environment that Defendants created

materially changed the terms and conditions of Plaintiff's work, creating a hostile environment. This caused Plaintiff to experience serious health concerns resulting in some mental and physical challenges.

(36)

Defendants' actions constitute unlawful race discrimination in violation of Title VII and Section 1981 and Defendants' actions constitute unlawful employment discrimination based on sex and race under federal regulations, any violation of the EPA is also a violation of Title VII.

(37)

Defendants' have willfully and wantonly disregarded Plaintiff's statutory rights and Defendants' discrimination was undertaken in bad faith.

(38)

As a direct and proximate result of the above-described unlawful employment practices, Plaintiff has suffered and continues to suffer the indignity of race discrimination, the invasion of right to be free from race discrimination, humiliation, loss of income and benefits, and other indignities, for which he is entitled to recover.

(39)

At all times relevant to this action, the relationship between Plaintiff and Defendant Emory University was a relationship of "employee" to "employer."

Title VII and Section 1981 makes it unlawful for an employer to retaliate against an employee who reports or opposes harassment, discrimination based on retaliation and/or race.

## Count II
### STATE LAW – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

(40)

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein. Defendants conduct towards Plaintiff mentioned herein was intentional and/or reckless, extreme and outrageous, and caused Plaintiff severe shame, humiliation, embarrassment and emotional distress of a nature that no reasonable person can endure.

(41)

Defendants knew or should have known that such conduct would result in severe emotional distress by Plaintiff. As a result of Defendants' conduct, Plaintiff has and will continue to suffer damages for which he is entitled to recover as provided by law.

## COUNT III
### STATE LAW – NEGLIGENT SUPERVISION AND RETENTION
(Against Defendant Emory University)

(42)

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

(43)

Defendant Emory University knew, or in the exercise of ordinary diligence, should have known of its employees' racial and harassment of Plaintiff. Emory University owed a duty to Plaintiff to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

Defendant intentionally put certain staff in place who had no prior experience for managing Plaintiff and his team. This caused an environment of toxicity, hostile environment, depression and oppression to Plaintiff and his team.

Lou Bottoms (white) took it upon herself to remove Jeffrey Norman (black) as Anesthesia manager who was experienced. Defendant displaced him to another part of the hospital because of unhealthy managing practice. Mr. Norman not only had the skills/experience it took to operate this department, but he was faithful to his job and managed over 15 employees without many complaints or problems.

(44)

Emory University breached the aforementioned duty by negligently supervising and retaining its employees who continued to harass Plaintiff and therefore continued to expose Plaintiff to a hostile work environment. Further,

Emory University ratified, condoned or adopted its employees' conduct via inaction.

(45)

Emory University acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff and/or his federally protected rights. Accordingly, Defendant is thus liable to Plaintiff for all damages.

COUNT IV
PUNITIVE DAMAGES
(Against All Defendants)

(46)

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

(47)

Defendants' actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression and complete disregard of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendants for and from such conduct in the future.

COUNT V
Equal Pay/Comparable Worth
(Against All Defendants)

(48)

Emory University and Defendants knew that the Plaintiff was entitled to call back pay, in fact Plaintiff by word of mouth was told to clock "call back" from leader Maquitha Mitchell during the inclement weather time period. Defendants deliberately withheld pay from the Plaintiff by changing his pay code from call back to regular pay. Emory University's policy went against what actually took place with Plaintiff in regard to changing plaintiff's time.

(49)

Defendants was at all times responsible for the Plaintiff's pay and scheduling. Withholding pay from Plaintiff was unfair, unreasonable and unjust. Defendants intentionally gave Plaintiff a "Disciplinary Action" based on his attempted call back punch stating it was not approved. Many other employees were granted call back pay. After several dialogues surrounding the events the Plaintiff remained calm, but was still treated unfairly. Plaintiff received another "Disciplinary Action" for "Attendance". Plaintiff left workplace and returned after he previously spoke to Maquitha Mitchell about his final exam schedule. The Plaintiff had never been written up for attendance before. This makes these events harassing. In fact, the Plaintiff's punch in/out data shows that the Plaintiff was on time for each shift prior to the switch of new management. When Plaintiff requested meetings with HR surrounding these events he was intimidated, excused of wrong doings, yelled

at and his schedule was changed abruptly, immediately without regard to his personal life. Again, Defendant acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff and/or his federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Grant Plaintiff a trial by jury as to all triable issues of act;

(2) Grant declaratory judgment that Plaintiff's right under the FLSA, Title VII, Section 1981, and Georgia State Laws have been violated;

(3) Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4) Award compensatory damages in an amount to be determined by a jury;

(5) Award appropriate back overtime pay, reimbursement for lost salary, unpaid wages, and compensate for other damages in amounts to be shown at trial;

(6) Award prejudgment interest on any award of back pay made by the jury as required by law;

(7) Award liquidated damages equal to any back pay for Defendants' willful violation of the FLSA;

(8) Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

(9) Award Plaintiff's attorneys' fees, costs, and disbursements if any; and

(10) Award Plaintiff such further and additional relief as may be just and appropriate.

Dated: March 5, 2020

Respectfully submitted,

Jeffery A. Phillips

PLAINTIFF

jphillips.a@gmail.com
4658 GRAND CENTRAL
PARKWAY
LOT 137
DECATUR, GEORGIA 30035
Telephone: (404) 941-6642
Alternative
Telephone: (404) 880-6955

By: _*Jeffery A. Phillips*_
_____
JEFFERY A. PHILLIPS