IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFERY A. PHILLIPS,

      Plaintiff,

v.

EMORY UNIVERSITY,

      Defendant.

CIVIL ACTION FILE NO.

1:19-cv-4640-TWT-JKL

## **FINAL REPORT AND RECOMMENDATION**

This employment case is before the Court on Plaintiff Jeffery A. Phillips's second amended complaint. [Doc. 8.] Because Plaintiff is proceeding IFP, his second amended complaint, like his initial and first amended complaints, is subject to preliminary screening to determine whether it is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2). For the reasons explained below, the undersigned **RECOMMENDS** that Plaintiff's case be **DISMISSED WITHOUT PREJUDCE**.

## BACKGROUND

### I.    Plaintiff's Original Complaint

In his original complaint, Plaintiff, who is African-American, alleged that Defendant discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. § 1981 ("Section 1981"), when he was harassed at work by his supervisor. [Doc. 1-1 at 5-12; *see also id.* at 11-13.][1] He also alleged that he was retaliated against for engaging in protected activity under Title VII and Section 1981 when his employment was terminated after he submitted a grievance to human resources. [*Id.*] Based upon the same events, Plaintiff asserted state law claims for intentional infliction of emotional distress and negligent supervision and retention. [*Id.* at 12-14.] Finally—and though he did not identify it among his enumerated causes of action—Plaintiff's complaint made reference to violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, apparently as it

---

[1] Although he has alleged generally that he was disciplined more harshly than white employees in portions of the factual background sections of his complaints [*see* Doc. 1-1 at 8; *see also* Doc. 6 at 9-10; Doc. 8 at 10], he has not asserted a cause of action for disparate treatment separately from his cause of action for hostile work environment in any of his complaints [*see* Doc. 1-1 at 11; *see also* Doc. 6 at 14; Doc. 8 at 16].

pertains to unpaid overtime work and sought relief based upon those alleged violations. [*See e.g., id.* ¶¶ 1, 7, 9; *see also id.* at 15 (prayer for relief).]

In support of his hostile work environment claim, Plaintiff alleged that his immediate supervisor, Maquitha Mitchell, "constantly chastised and reprimanded [him] even though he performed his tasks diligently," and received commendations from other co-workers. [Doc. 1-1 at 6-7.] Around the same time, in March 2018, his work schedule was changed to one that no longer accommodated his personal schedule[2]; and when Plaintiff "decided to leave one day because he had class," he received a written warning. [*Id.* at 7.] Plaintiff stated simply that he was "disciplined harsher than whites," and that the human resource personnel who implemented the disciplinary action were white, but did not identify Mitchell's race, did not identify anyone outside of his protected class who was not subject to similar adverse actions, and did not identify any specific facts to support his contention that the alleged "harassment" or discipline was based upon his race. [*Id.* at 7-8.]

---

[2] Plaintiff was a student, and alleges that he initially worked a night shift to accommodate his class schedule. After a change in management, however, Plaintiff was moved to a day shift. [Doc. 1-1 at 7.]

Next, Plaintiff alleged the following in support of his retaliation claim. Apparently soon after receiving the written warning, Plaintiff filed a "grievance" about it with human resources, specifically with Sharon Barret. [Doc. 1-1 at 7-8.] Plaintiff did not explain the substance of the grievance or otherwise suggest that the grievance raised complaints of racial harassment or discrimination. Approximately a week later, Plaintiff received a call, and was told to meet Mitchell and another employee, Lou Bottoms.[3] [*Id.* at 9.] Mitchell and Bottoms then approached Plaintiff in an "intimidating and hostile" manner and accused Plaintiff of being "belligerent, aggressive and hostile" himself. [*Id.*] Plaintiff alleged that he attempted to excuse himself, but that Bottoms called security and had him escorted from the building. [*Id.*] Barret and Bottoms met soon after and decided to terminate Plaintiff's employment based upon the written warning and the subsequent events. [*Id.* at 10.] Concerned about the situation, Plaintiff later visited the human resources office to "discuss options for keeping his job," to "ask [] about a mediator," and to inform them of his rights "relating to an EEOC complaint," but Plaintiff was told that Barret was too busy to meet with him. [*Id.*] Plaintiff claimed

---

[3] Bottoms was identified in later pleadings as a director over Plaintiff's department.

that the "stated reasons" for his termination were pretextual, and that he was in fact discharged for (1) being "assertive," (2) refusing to "yield to [] aggressive, unwanted and rude behavior," and (3) for his "notice to HR of rights to file a[n] EEOC complaint." [*Id.*] Approximately four months later, in July 2018, Plaintiff filed a charge of discrimination with the EEOC, and in July 2019, he received a notice of right to sue. [Doc. 1-1 ¶¶ 5, 30.]

Conducting the initial frivolity review, the Court explained to Plaintiff that:

(1) his harassment claims failed to include facts plausibly supporting (a) that race motivated any of the conduct or (b) that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment [Doc. 2 at 6-10];

(2) his retaliatory discharge claims failed because he did not allege facts to support (a) that he had an objectively reasonable belief that the complained-of conduct was unlawful (and therefore he did not engage in protected activity by complaining initially), (b) that he otherwise engaged in activity protected by Title VII by merely invoking his rights to file an EEOC charge (as opposed to actually filing an EEOC charge, as he did after his discharge), or (c) that there was a causal connection

between any purported protected activity and his discharge, since the termination decision was made prior to invoking his rights to file an EEOC charge  [*id.* at 6-15];

(3) his state law claim for intentional infliction of emotional distress ("IIED" failed to include (a) anything more than his earlier allegations of harassment and racially motivated reprimands, and therefore did not include sufficiently extreme or outrageous conduct required support a claim for IIED, or (b) any specific mental or physical distress to support a prima facie claim for IIED [*id.* at 15-18];

(4) his state law claim for negligent supervision and/or retention failed because, as a derivative claim, it had no support in any separate, underlying tort claim [*id.* at 18-20]; and

(5) his reference to violations of the FLSA did not support a claim for relief because the complaint did not set forth any allegations estimating the amount of uncompensated overtime he worked or which would otherwise allow a reasonable inference about the extent of such work [*id.* at 20-21].

Because Plaintiff was proceeding *pro se*, rather than dismiss his claims outright, the Court provided him with an opportunity to replead his complaint under Federal Rule of Civil Procedure 12(e). [Doc. 2 at 21-22 (citing *De Souza v. JPMorgan Chase Home Lending Div.*, 608 F. App'x 776, 781 (11th Cir. 2015); *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 556-57 (11th Cir. 2013)).] In addition to the preceding discussion of his claims and the reasons why each failed, the Court provided specific instructions on how to replead his causes of action under Title VII and Section 1981 with sufficient specificity and clarity to support a plausible claim for relief. [*Id.* at 22.] Plaintiff was warned that his "**if he fail[ed] to submit an amended complaint that complies with this Order . . . this action may be dismissed without prejudice**." [*Id.* (citing among others, Fed. R. Civ. P. 12(e) and *Carvel v. Godley*, 404 F. App'x 359, 360 (11th Cir. 2010)).]

## II.    Plaintiff's First Amended Complaint

Plaintiff then filed a "Resubmit[ted]" version of his complaint, which was largely a verbatim copy of the original complaint, but included the following additions. [Doc. 6 (1st Am. Compl.).] In relation to his discrimination and harassment claims, Plaintiff further asserted that:

7

- he and all of his supervisors and managers were African-American (four were specifically identified), but the director above them, Bottoms, and one human resources employee, Barrett, who together had final decision-making authority, were white [Doc. 6 ¶¶ 10-12, 18-21];

- the supervisors and managers who allegedly harassed him were "intimidated by" the director, Bottoms, and "feared losing their jobs if they did not carry out certain task[s]" [*id.* ¶ 19];

- two (now identified) white employees were not disciplined for "display[ing] misconduct," the timing, substance, and decision-maker of which is still not explained [*id.*][4];

- Plaintiff's disciplinary write-up for unexcused absenteeism was racial discrimination, for reasons that are not explained [*id.* ¶ 20];

- in the months preceding his discharge, a task force had been put together to addressed employees' "concerns to Doctors and upper management [about] the feeling of hostile work environment," which is not

_____

[4] As noted earlier, while Plaintiff alleged generally that he was disciplined more harshly than white employees, he did not assert a cause of action for disparate treatment. [*Compare* Doc. 6 at 9-10, *with id.* at 14.]

specifically liked to race or any other characteristic protected by Title VII, [*id.* ¶ 22]; and

- the director, Bottoms, "altered Plaintiff's working conditions to such that Plaintiff found it to be hostile and abusive," again based upon reasons that are not explained [*id.* at 23].

In relation to his claim of retaliatory discharge, he additionally alleged:

- that after he had been absent (due to a change in his personal schedule), he became a "target" because he was confident and spoke up for himself, filing a grievance about the disciplinary write-up with human resources [*id.* ¶ 25];

- that the "grievance" to human resources was "paperwork [] so that Plaintiff could keep his job and work out any problems that were misunderstood," [*id.*];

- that the "written warning for absenteeism was unlawful [because] Plaintiff had never been written up before for absenteeism/tardiness (the Plaintiff was never late or absent from work [before])" [*id.* ¶ 28];

- that retaliatory motive was demonstrated by his Mitchell and Bottom's intervention into process, since he sought to work out the issues solely and directly with human resources [*id.* ¶ 25];

- that his absenteeism and subsequent confrontations with his supervisor and director were not sufficient to justify the termination of his employment, and that he was instead discharged because of his "grievance made to HR and the fact that Plaintiff explained to [his supervisor] that they did not have a reason to terminate him and he was going to file a charge with EEOC," [*id.* ¶ 29].

Conducting another frivolity review, the Court again ordered Plaintiff to replead, explaining that:

(1) his harassment claim still failed to state a plausible claim because it did not include facts supporting that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment [Doc. 7 at 10-11];

(2) his retaliatory discharge claims also still failed because he did not allege facts to support (a) that he had an objectively reasonable belief that the complained-of conduct was unlawful (because he failed to plead that any

10

alleged harassment was severe or pervasive) or (b) that he otherwise

engaged in activity protected by Title VII by merely invoking his rights

to file an EEOC charge (as opposed to actually filing an EEOC charge,

as he did after his discharge) [*id.* at 11-12]; and

(3) his state law claims for IIED and negligent retention and supervision and

his FLSA claim—to which he had not added any factual support to—

continued to fail for the reasons specified in the Court's previous order

[*id.* at 12 (citing Doc. 2 at 15-20)].

Plaintiff was granted one final opportunity to amend his pleading, was given

specific instructions on how to replead his claims, and was warned that his failure

to comply with the Court's orders on repleading could result in the dismissal of his

case. [*Id.* at 12-14.]

### III.    Plaintiff's Second Amended Complaint

On April 2, 2020, Plaintiff filed the present second, "Ammendant Complaint,"

which is, yet again, largely a verbatim regurgitation of his prior complaints. [Doc.

8 (2nd Am. Compl.).]  Plaintiff has once more added a few additional factual

allegations that, though they border on conclusory, tend to support that the alleged

harassment and disciplinary writeup were motivated at least in part based upon race

[*see id.* ¶¶ 19-21, 24]; and that he was not receiving equal pay to similarly situated, non-African American employees (and/or women) and complained to management that he was not receiving commensurate pay with "most employees of the opposite sex and race for equal work . . . ." [*id.* ¶¶ 31-33; *see also id.* ¶¶ 48-49]. Plaintiff continues to assert causes of action for harassment and retaliation under Title VII (and perhaps Section 1981) [*id.* ¶¶ 35-39]; for IIED and negligent supervision and retention under Georgia state law [*id.* ¶¶ 40-45]; and requests relief pursuant to the FLSA (though does not assert it as a separate cause of action) [*id.* ¶¶ 7, 9, Prayer for Relief]. Plaintiff also adds a cause of action for "Equal Pay/Comparable Worth," which appears to amalgamate all of his allegations concerning his work schedule, the change to that schedule, his pay in comparison to similarly situated employees, and even his harassment[5] and retaliation claims. [*See id.* at 48-49.] Plaintiff does not specify the statutory or common law basis for the Equal Pay/Comparable Worth claim. [*Id.*]

---

[5] For example, Plaintiff states "The Plaintiff had never been written up for attendance before. That makes these events harassing." [Doc. 8 ¶ 49.]

## ANALYSIS

### I.    Plaintiff's Repleaded Claims

While Plaintiff has again bolstered his claims for relief under Title VII and Section 1981, he still has not actually addressed the Court's repeatedly expressed concerns.  As it pertains to his hostile work environment claims, Plaintiff simply has not included any new factual allegations to plausibly suggest that the alleged harassment was sufficiently severe or pervasive so as to alter the terms and conditions of his employment and create a discriminatorily hostile work environment.   Despite two warnings from the Court that the few isolated incidents—all consisting of verbal confrontations without the use of any epithets— were insufficient to state a plausible claim, Plaintiff has still not alleged the sort of "extremely serious" harassment necessary to sustain a hostile work environment claim.[6]  *See Jacobs v. Biando*, 592 F. App'x 838, 841 (11th Cir. 2014); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

---

[6] While Plaintiff has presented new allegations that Bottoms harassed other employees [*see* Doc. 8 ¶ 24], those allegations do not pertain to any harassment that Plaintiff experienced or even witnessed [*see id.* ("[Emory Healthcare employee Valencia Wyche, has witnessed several occurrences . . . .")].

Moreover, as previously explained, because Plaintiff fails to raise his hostile work environment claim to the plausible level, his retaliation claim likewise still fails to establish that he had a "good faith reasonable belief" that any conduct he complained of was prohibited by Title VII or Section 1981, *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), without which, he cannot establish that his grievance amounted to activity that would be protected from retaliation, *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1307 (N.D. Ga. 2001). Further, Plaintiff also continues not to describe the content of his grievance or why it amounted to protected activity, except to say that at some point he invoked his right to file an EEOC charge, which again, as explained earlier, is not sufficient to amount to protected activity. *Anduze v. Fla. Atl. Univ.*, 151 F. App'x 875, 877 (11th Cir. 2005) (citing *Total System Services, Inc.*, 221 F.3d at 1174). Without more to support that he engaged in activity protected by Title VII or Section 1981, he cannot make out a plausible claim for unlawful retaliation.

As noted above, Plaintiff also has not bolstered his claims for IIED, negligent supervision and/or retention, or unpaid work under the FLSA in any way. And, for

the reasons already explained in the Court's earlier orders, those causes of action still fail to state a plausible claim for relief. [*See* Doc. 2 at 15-20.]

Lastly, Plaintiff has not specified, and the Court cannot discern, any particular factual or legal basis for his Equal Pay/Comparable Worth claim, which complains that:

- Plaintiff did not receive the same rate of pay as "most employees of the opposite sex and race for equal work";

- Defendant disregarded his "finances" and "educational goals," in changing his work schedule, despite apparently promises during his interview that he could have a flexible schedule;

- A "non-black" employee was allowed to have a specific day off each week due to having outside obligations when Plaintiff was not allowed to keep a flexible schedule;

- Plaintiff did not receive "call back pay," which he heard "by word of mouth" he was entitled to during some "inclement weather period" or periods;

- Plaintiff received "'Disciplinary Action' for "Attendance," which appears to be the warning he received after his absence due to the conflict between his work and class schedules; and

- Plaintiff was "harassed" in relation to his changed schedule, as well as the discipline he received for absenteeism.

[Doc. 8 ¶¶ 31-32, 48-49.]  This appears to be a combination of the harassment, retaliation, and FLSA claims previously enumerated with some form of claim under the Equal Pay Act, 29 U.S.C. § 206(d).  As to the harassment and retaliation portions, they fail to state a claim under Title VII and Section 1981 for the reasons specified above.  As to the FLSA piece—pertaining to allegations he did not receive "call back pay" to which he might have been entitled—Plaintiff still has not set forth any allegations that allow any reasonable inference as to the amount and/or extent of work that was inadequately compensated, and therefore fails to state a plausible claim for relief.  *See Rance v. Rocksolid Granit USA, Inc.*, 292 F. App'x 1, 2 (11th Cir. 2008).  And finally, to the extent Plaintiff attempts to bring an Equal Pay Act claim—to which Plaintiff never actually cites anywhere in the complaint—he has failed to plead any "facts comparing [his] skill, effort, and responsibility levels to" any alleged comparator, and therefore fails to plausible assert a claim

that he was not paid equally for the same work. *See Arafat v. School Bd. of Broward Cty.*, 549 Fed. App'x 872, 875 (11th Cir. 2013); *see also Port Auth. of NY & NJ*, 768 F.3d 247, 258 (2d Cir. 2014) (affirming dismissal where the plaintiff made no allegations of actual job duties performed by comparator). Ultimately, this cause of action is "an amalgamation of all [the other] counts," and a classic shotgun claim, and, thus, it fails to comply with the pleading requirements of the Federal Rules and is subject to dismissal. *Monaghan v. Worldpay US, Inc.*, No. 17-14333, 2020 WL 1608155, at \*6 n.6 (11th Cir. Apr. 2, 2020).

In sum, while Plaintiff has added some allegations increasing the possibility that race was a factor in the actions described by the complaint, he still has not raised his right to relief above the speculative level and established a plausible claim for hostile work environment harassment, retaliation, IIED, negligent retention and/or supervision, or FLSA or Equal Pay Act violations.

## II.     Further Repleader is Not Warranted

When a court has ordered repleader, and a plaintiff has refused to comply with the court's order by filing a repleader with the same deficiencies, the court should strike the pleading and, depending on the circumstances, dismiss the case and consider the imposition of monetary sanctions. *Abimbola v. Broward Cty.*, 266

F. App'x 908, 909-10 (11th Cir. 2008) (dismissing complaint after giving plaintiff one chance to replead because plaintiff failed to follow the court's instructions on how to replead); *Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 276 (11th Cir. 2008) (affirming district court's dismissal of complaint with prejudice because it still did not comply with Rule 8 after plaintiff was given two opportunities to amend her complaint). District court intervention in this fashion accomplishes the following objectives:

> First, it conserves judicial and parajudicial resources and thereby benefits litigants standing in the queue waiting to be heard. Second, it curtails the need for satellite litigation under Rule 11, 28 U.S.C. § 1927, or the court's inherent power. Third, it minimizes counsel's and his client's exposure to a criminal contempt citation. Fourth, it limits the potential for post-litigation tort actions for abuse of process or malicious prosecution. Fifth, early *sua sponte* intervention— coupled with the imposition of punitive measures when the use of abusive litigation tactics is deliberate—operates as both a specific and a general deterrent. And, finally, early *sua sponte* intervention will ensure public confidence in the court's ability to administer civil justice.

*Byrne v. Nezhat*, 261 F.3d 1075, 1133-34 (11th Cir. 2001), *abrogated on other grounds, Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011).

"Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable,

the litigants suffer, and society loses confidence in the Court's ability to administer justice." *Beckwith*, 146 F. App'x at 372.

Applying these principles to the facts of this case, Plaintiff's second amended complaint fails to meet the the federal pleading requirements and this Court's repeated directions, and is subject to dismissal. *Abimbola*, 266 F. App'x at 909-10; *Lampkin-Asam*, 261 F. App'x at 276; *see also Goodison v. Wash. Mut. Bank*, 232 F. App'x 922, 923 (11th Cir. 2007) (affirming *sua sponte* dismissal of plaintiff's complaint because plaintiff's effort to amend her complaint was not a meaningful attempt to comply with the court's order); LR 41.3A(2), NDGa. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second amended complaint be dismissed.

Additionally, this is no longer an appropriate case to *sua sponte* allow Plaintiff another—that is, fourth—opportunity to bring his proposed pleading into compliance. Plaintiff has completely disregarded this Court's earlier orders and careful instructions regarding how to replead his claims and has instead filed pleadings that contain only superficial differences. Where it appears that a more carefully drafted complaint might state a claim, a *pro se* plaintiff is supposed to be given an opportunity to amend the complaint before the court dismisses the action.

*De Souza v. JPMorgan Chase Home Lending Div.*, 608 F. App'x 776, 781 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). However, the district court need not grant leave to amend "where amendment would be futile." *Id.* The "repeated failure to cure deficiencies by amendments previously allowed . . . can justify dismissal with prejudice." *Carvel*, 404 F. App'x at 360; *see also Marshall v. Aryan Unlimited Staffing Sol./Faneuil Inc./MacAndrews Holding*, 599 F. App'x 896, 898 (11th Cir. 2015) (upholding dismissal with prejudice of *pro se* plaintiff's Title VII action after plaintiff's "repeated failure, after multiple warnings, to file a complaint that complied with procedural rules and the court's orders"); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 998 (11th Cir. 2014) (concluding that district judge did not abuse his discretion when he did not *sua sponte* offer *pro se* plaintiff an opportunity to amend his complaint because *pro se* complaint was second attempt to make a legally cognizable claim arising from an alleged attempted foreclosure on real property and there was no indication that if plaintiff was given a third bite at the apple, he would correct the numerous deficiencies in his complaint); *Birdette v. Saxon Mortg.*, 502 F. App'x 839, 841 (11th Cir. 2012), *cert. dismissed*, 133 S. Ct. 1597 (2013) (upholding district court's dismissal of plaintiffs' claims with prejudice after plaintiffs had filed multiple

20

complaints). Given that Plaintiff has repeatedly filed pleadings in this action without any attempt to cure the problems identified by the Court, the Court has no reason to believe that he would make any effort to comply with the Court's order if given yet another chance. Subsequent amendment would therefore be futile and would interfere with the Court's ability to protect its docket from frivolous and abusive litigation. As a result, this case should be dismissed without prejudice and without any further opportunity to amend.

## CONCLUSION

For the reasons discussed above, it is **RECOMMENDED** that Plaintiff's case be **DISMISSED WITHOUT PREJUDICE**.

IT IS SO RECOMMENDED this 22nd day of April, 2020.

_____

JOHN K. LARKINS III
United States Magistrate Judge